**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAULO HENRIQUES DA CUNHA,<br><br>                              *Plaintiff,*<br>v.<br><br>GETTY IMAGES (US), INC.,<br>JOHN DOES 1-100, and<br>XYZ CORPORATIONS 1-100,<br><br>                              *Defendants.* | **COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paulo Henriques da Cunha ("Cunha" or "Plaintiff"), by his undersigned attorneys, alleges as follows, upon actual personal knowledge with respect to himself and his own acts, and on information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 and § 501 *et seq.*  Plaintiff Cunha brings this action against Defendant Getty Images (US), Inc. for copyright infringement of 295 of Cunha's copyrighted Photographs (the "Photographs").

2.      Defendants Getty Images (US), Inc. ("Getty" or "Getty Images"), committed willful copyright infringement of Cunha's Photos and violations of each Photographs' copyright management information ("CMI") pursuant to 17 U.S.C. § 1201 *et seq.*

3.      Getty Images infringed Cunha's copyrights in his registered Photographs by continuing to reproduce, publicly display, distribute, and/or create derivative works from the Photographs on its U.S. public-facing photo licensing website long *after* Cunha had terminated and revoked authorization for Getty Images to use his Photographs on August 25, 2022.

1

4.      Getty also *continued* its use of its "gettyimages" and a "Eurofootball" watermark logo affixed on each Photograph displayed on Getty's website, gettyimages.com, thereby knowingly continuing a public display of CMI on Cunha's Photographs that Getty knew to be false and that enabled infringement because Cunha had terminated any authorization Getty may have had on August 25, 2022.

5.      Cunha seeks to enjoin the above activities and recover actual damages and/or statutory damages for copyright infringement and CMI violations, Getty's profits, Cunha's attorneys' fees, costs, and other relief as the Court may deem appropriate.

## THE PARTIES

6.      Plaintiff Paulo Henriques da Cunha is resident of Portugal.

7.      Defendant Getty Images (US), Inc. is a New York corporation with an office in this District at 195 Broadway, Floor 10, New York, New York 10027 according to the New York Department of State's website.  Getty Images is one of the largest creators of visual content such as film and photographs and serves as a licensing agent of editorial and commercial, offering and selling licenses to U.S. customers and customers in this District. Getty Images can be served at: CT Corporation System, 28 Liberty St., New York, New York 10005.

8.      Getty Images has represented in public court filings that "Most of the images and videos displayed on Getty Images' websites are original, creative works that enjoy protection under U.S. copyright laws. For many of these visual assets, including all of the assets subject to the copyright infringement claims at issue in [*Getty Images (US) v. Stability AI*], "Getty Images either owns the copyright or is an exclusive licensee; for others, Getty Images is a non-exclusive licensee."

9.      Nominal defendants JOHN DOES 1-100 and XYZ CORPORATIONS 1-100 ("Nominal Defendants"), which are unknown to Plaintiff, infringed Plaintiff's copyrights willfully, and otherwise caused harm to Plaintiff as set forth herein and did so as a consequence of their business with Defendant.  As the identify of Defendant's customers and business affiliates are within the exclusive possession of Defendant, such information may only be revealed through discovery, and Plaintiff reserves the right, upon learning of the identities of said individuals or entities, to move to amend this Complaint to name these companies and individuals as defendants.

## JURISDICTION AND VENUE

10.      This action arises under the federal Copyright Act, 17 U.S.C. §§ 101, *et seq.*  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b).

11.      This Court has exclusive jurisdiction over Defendant for copyright infringement of Plaintiff's registered works. Plaintiff's claims exclusively arise out of Defendant's copying, distributing, and/or publicly displaying Plaintiff's copyrighted Photographs in the U.S. to Getty's customers in this District and throughout the U.S.

12.      This Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant has infringed Plaintiff's copyrights within this District and, as a result, Cunha has been harmed in this District by Defendant.  Defendant may also be found in this District because Getty Images is a New York corporation.

13.      Pursuant to 28 U.S.C. Section 1400, "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights …may be instituted in the district in which the

defendant or his agent resides or may be found or where the defendant has committed acts of infringement and has a regular and established place of business."

14.      In particular, Getty Images has, without Cunha's authorization, reproduced, distributed, publicly displayed, created derivative works, and held out for licensing the Photographs, committed infringement in this District.

## FACTUAL ALLEGATIONS

15.      Plaintiff Paulo Henriques da Cunha is a highly skilled photographer and photojournalist with over 20 years of experience capturing and curating photographs.

16.      Plaintiff Cunha owns the copyright to photographs he creates unless he enters into a written agreement assigning ownership to another entity or individual.

17.      Throughout his career, Cunha has relied on his creativity, intuition, skill, artistic ability, and professional experience to capture original, creative, newsworthy and memorable photographs.

18.      Cunha's Photographs exhibit creativity, originality, and are the result of Cunha's efforts as a photojournalist.

19.      Getty Images (US) operates, controls and is liable for infringement on its U.S. website, gettyimages.com, a website that is accessible to internet users in New York and elsewhere in the United States for licensing. From that website, users throughout the United States, including in this District, access Getty Images' offerings of photographs that are publicly displayed for license offerings.

20.      On occasion, Cunha, as a freelance photojournalist, accepted and agreed to capture photographs at certain events at the request of media outlets and wire services such as Agence France Presse ("AFP), which included soccer (football) matches.

21.     On September 17, 2013, September 19, 2013, and September 18, 2014, AFP requested that Cunha, as a freelance photojournalist, attend certain soccer matches and capture photographs at Cunha's own direction, control and discretion in Portugal (the "Matches").

22.     Cunha agreed with AFP's request, capturing hundreds of photographs of the Matches, including the Photographs at issue.

23.     For the three soccer Matches Cunha photographed, Cunha did not sign a written agreement with AFP or Getty, but understood that AFP was his client, that he was taking photographs for AFP and that AFP could distribute to Getty for use in news coverage and wire publication only, but that Cunha owned the copyright to the Photographs he created.

24.     As a freelance photojournalist, Cunha used his own equipment (camera and digital storage device), made his own decisions as to specific subject matter and mechanics, and employed his unique creative skills in capturing photographs of the Matches.

25.     Cunha was solely responsible for deciding which moments in time at the Matches to photograph and which Photographs to provide to AFP.

26.     Cunha personally selected each and every Photograph from among a much larger set of photographs he captured at the Matches and sent the Photographs to AFP which shared the Photographs with Getty.

27.     Cunha is the sole creator and author of the Photographs, and the copyright in each Photograph was established at the moment of creation (i.e., the moment Cunha captured each Photograph as a freelance photojournalist working without a written contract or assignment of copyright).

28.     On information and belief, AFP compensated Cunha only a flat fee per day as consideration for Cunha to cover the Matches, granting AFP an implied non-exclusive license to distribute the 295 Photographs on AFP's news wire service.

29.     Cunha also understood that AFP would share a copy of each Photograph with Getty for (the "Wire Service Period")[1] where AFP and Getty's customers would have access to the Photographs for a news coverage period or other editorial purposes.

30.     On information and belief, at some point AFP transferred the Photographs into AFP's "archive," the AFP Image Forum, where they were offered for "secondary" licensing beyond the Wire Service Period.[2]

31.     AFP never paid Cunha for any secondary/post-Wire Service Period sales.

32.     Getty never paid Cunha for any secondary/post-Wire Service Period sales.

33.     Cunha never granted a written license to Getty, nor did Getty ever pay Cunha consideration for Getty's use of the Photographs on the Getty Images website(s) where Getty offered to license the Photographs to third parties.

34.     Cunha understood that, as copyright owner of the Photographs, he could revoke any authorization Getty and AFP may have had to use the Photographs at any time after the Wire Service Period concluded.

35.     On information and belief, Getty published the Photographs on its website(s), including its U.S. website, gettyimages.com, to offer its customers licenses to them for as much as $499 per Photograph.

---

[1] AFP and Getty generally define the Wire Service Period as the first day a photograph appears on the wire (generally the same day captured) through a period of 30 or 31 days. After that, photographs were likely made available for secondary licensing on the AFP Image Forum and Getty's archive.

[2] The internal mechanics of this change in designation are presently unclear to Plaintiff, but the point is that, per industry standard, there are two distinct periods under which editorial photographs are offered for licensing: the breaking news wire service period and the archival, secondary sales period.

36.     Getty used the "gettyimages" and "EuroFootball" watermark to publicly display the Photographs available on the Getty's Platform(s) (as shown below) and each of the 295 Photographs contain the same gettyimages watermark:



37.     Each Photograph with evidence of infringement can be accessed her:  295 Photo infringements.pdf.[3]

38.     When Cunha captured each Photograph with his camera, specific metadata was automatically populated and correlated to each Photograph image file as it was saved to the

---

[3] https://duncanfirmcom.sharepoint.com/:b:/g/ESG25autmqtAt83dde11pAoB1vlYilT8jdNlj2jI-I5wZQ?e=Zrq7hs

camera's digital storage card, including the date and time at which the photograph was captured ("Cunha Photograph Metadata").[4]

39.     At all times, Cunha was the sole owner of the Photographs. Cunha secured U.S. Copyright Registrations for each Photograph prior to when the infringing conduct occurred by Getty and prior to filing suit as required by law, presuming the Photographs are U.S. works that required registration.

40.     AFP never challenged Cunha's sole copyright in the Cunha Photographs or his take down demands to remove Cunha's Photographs from the AFP Forum (their licensing site) and complied within a reasonable time period after being instructed to take down the Photographs.

41.     Cunha did not execute a written copyright assignment or transfer of rights or written license agreement with AFP or Getty.

42.     Despite the absence of a written contract or copyright assignment agreement with Cunha, Cunha permitted AFP and Getty to exploit the Photographs on their respective and separate editorial archives with Cunha's authorization.

43.     However, Cunha, as the copyright holder of each Photograph who had not received consideration for any Photograph's use in either AFP's or Getty's secondary sales market, terminated and revoked his authorization to the Photographs when he sent AFP and Getty a takedown on August 10, 2022 notice via email with a termination/revocation deadline of August 25, 2022.

---

[4] Cunha has in his possession the original copies of 187 of the 295 Photographs and will produce those as required; however, 108 of the Photographs were lost/corrupted due to a hard drive failure.   Getty should have preserved the copies of those 108 Photographs with the original metadata (and without the gettyimages watermark) and put a litigation hold them. However, all photographs were registered prior to the termination deadlines noted above using deposit copies that satisfy the US Copyright Office's registration requirements.

44.     Having received no response to his August 10, 2022 notice, Cunha sent a second takedown notice via email to both AFP and Getty on August 17, 2022, this time bearing a deadline of September 1, 2022, for the companies to comply with his revocation demand.

45.     On August 25, 2022, AFP replied to Cunha's August 10 email by stating that AFP had taken down all of Plaintiff's Photographs from AFP's server on August 12, 2022 and blaming summer vacations for the lack of timely communication:

> From: Eric BARADAT █████████████████
> Subject: Re: [EXTERNAL] Takedown Notice
> Date: 25 August 2022 at 11:16
> To: paulocunha █████████████████
> Cc: █████████@afp.com █████████@afp.com,
> Andrea.Sinik█████████████, Marie-Laure MESSANA
> █████████████████████████, Stéphane ARNAUD █████████████████████
>
> Hi Paulo,
> Sorry for the late reply on your request that came at the heist of the summer vacations here in Paris.
> **All your above-mentioned images were withdrawn from all our servers (as well as Getty's and other distributors of AFP content) on August 12, 2022 and were no longer distributed starting on this same date.**
>
> All our main subscribers received a notice to erase the images they may have kept on local servers on August 19, 2022.
>
> Sorry we didn't formally tell you before today.
> Sincerely.
> Eric

46.     In its August 25, 2022 email, AFP impliedly acknowledged, and it can reasonably be inferred that AFP was not the copyright owner of the Photographs and that Cunha had effectively revoked AFP's authorization to use the Photographs.

47.     Getty Images never responded to Cunha's August 10, 2022 takedown email.

48.     Getty Images never responded to Cunha's second take down notice sent on August 17, 2022.

49.     AFP's August 25, 2022 statement that the Photographs had been removed from AFP's and Getty's servers on August 12, 2022 was inaccurate as Cunha observed that the Photographs remained published on AFP's archive until August 19, 2022 and Getty's U.S. website, gettyimages.com, until May 2023.

50.     On August 30, 2022, AFP responded to Cunha's August 17, 2022 takedown email to AFP and Getty by once again writing that the copies of Cunha's Photographs had been removed from public display:

> De: Eric BARADAT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> Date: terça, 30/08/2022 à(s) 15:55
> Subject: Re: [EXTERNAL] Takedown Notice
> To: [Paulo Cunha] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> Cc: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Stéphane ARNAUD
> ▮▮▮▮▮▮▮▮▮▮▮ Marie-Laure MESSANA ▮▮▮▮▮▮▮
> ▮▮▮▮▮▮▮, Lionel CIXOUS ▮▮▮▮▮▮▮▮▮▮▮▮▮
>
> Hello Henriques,
> I hope this email finds you well.
> This is to confirm that the pictures you mention in your email below were all withdrawn from AFP servers on August 19, 2022, and that **we asked all our partners [Getty Images]** to withdraw them also.
>
> Best regards.
>
> Eric Baradat
>
> Eric BARADAT – AFP Global News Deputy Director for Photo, Graphics, Documentation and Data

51.     AFP's August 30, 2022 statement that Cunha's Photographs had been removed from AFP's servers was entirely consistent with what Cunha observed as the Photographs were no longer publicly displayed on AFP's archive.

52.     However, Cunha observed that the Photographs remained displayed and available for licensing on gettyimages.com, Getty's U.S. archive until May 2023, using the gettyimages watermark.

53.    AFP never asserted ownership of the Cunha Photographs and acted expeditiously and reasonably, respecting Cunha's copyright and his right to terminate authority for licensing of his Photographs by taking down all his Photographs within the authorization deadline's expiration date.

54.    AFP has previously admitted in writing that a signed writing was required for a photojournalist to assign his copyright in a photograph over to AFP.

55.    Absent a fully executed, transfer or assignment of copyright with price, terms and signatures by all parties for copyright assignment, Getty cannot plausibly or in good faith challenge the copyright ownership of Cunha's Photos (regardless of what jurisdiction's laws apply) as this would be inconsistent with longstanding norms regarding copyright ownership under US Law, the Berne Convention, or Portuguese law, as well as prevailing industry practice for photojournalists, such as Cunha, who retain all ownership of copyrights in photographs created by him and the right to terminate authority for use of the Photographs in the secondary sales market.

## GETTY WILLFULLY INFRINGED DANIEL MOREL'S COPYRIGHTS

56.    In a prior lawsuit within this District, Getty was found liable (along with AFP) for copyright infringement following its unauthorized use of a photojournalist's photographs taken of the Haiti earthquake and its aftermath.  *See Agence France Presse v. Morel*, No. 10-cv-2730 (AJN) (S.D.N.Y.)

57.    The *Morel* litigation revealed facts about AFP and Getty's relationship under an AFP-Getty "content partnership agreement," which may be relevant to the facts of this case, including that any dispute with AFP and Getty is governed by New York law and any dispute

may be litigated in New York.  Cunha has no knowledge of the contents of this agreement or its terms or any application to this dispute.

58.    Approximately three years before AFP's September 2013 request for Cunha to capture photographs of one of the Matches, AFP filed suit in 2010 in this District against photojournalist Daniel Morel seeking, inter alia, a declaratory judgment that AFP did not infringe Morel's copyrights in photographs depicting the devastation of the 2010 Haiti earthquake ("Morel Photographs").

59.    During the *Morel* litigation, it was revealed that AFP sometimes (if not routinely) circulates a "kill notice" to notify its licensing agents, such as Getty, as well as photograph licensees, that a photograph should no longer be used because it is under a claim of infringement or a license has been terminated.

60.    On January 14, 2010, AFP circulated the below "kill notice" for the Morel Photographs just one day after it became aware of a potential copyright dispute with Morel:



61.     During the litigation, it was also revealed that Getty circulated similar notifications to Getty licensees instructing them to discontinue use of the Morel Photographs.

62.     On November 22, 2013, a jury found that AFP and Getty willfully infringed Morel's copyrights in these photographs and violated Morel's copyright management information and awarded Morel $1.2 million for only eight (8) photographs.

63.     On August 13, 2014, AFP and Getty filed a motion for a judgment as a matter of law, a new trial, and/or to remit the jury's award to Morel to a lower amount.  The Court declined to remit the jury's $1.2 million award and found that the jury could have properly concluded that Getty intended "to enable the continued licensing of the [falsely credited] images to Getty's customers" such that "Getty's *continued* distribution of the [falsely credited] images following AFP's kill notice satisfied all of the elements required by § 1202(a)."  *Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124, at *8 (S.D.N.Y. Aug. 13, 2014).

64.     Even though Getty had actual knowledge of the jury verdict in the 2014 *Morel* litigation at the time Plaintiff Cunha captured his third set of soccer match Photographs, Getty recklessly failed to confirm and document any rights Getty Images had to publish, display and solicit licenses for Cunha's Photographs for the secondary market licensing period in the United States.

## GETTY IMAGES' WILLFUL INFRINGEMENT

65.     The US Copyright Office issued valid United States Copyright Office registrations to Cunha for all 295 Photographs under registrations numbers VA-2-317-360 for the September 2013 Photographs and VA-2-317-359 for the 2014 Photographs, with an effective registration date of August 22, 2022 for each Photograph.

66.     Getty ignored Cunha's revocation or termination of authorization to use his Photographs by disregarding his August 25, 2022 and September 1, 2022 takedown deadlines and any AFP's kill notice(s), thereby willfully, intentionally and/or recklessly disregarding and infringing Cunha's copyright in his Photographs.

67.     Getty continued to publish, distribute, and publicly display Cunha's Photographs on Getty's U.S. licensing platform, which meant it simultaneously continued to publish and display the false CMI of Getty's watermark, gettyimages (by example), despite Cunha's takedown demand and despite representations from AFP that AFP had informed Getty of the need to remove the Photographs from Getty's licensing site.

68.     Getty continued to publish, display and offering for licensing all of Cunha's Photographs after August 25, 2022 and September 1, 2022 on its U.S. licensing website despite being on a notice that its rights had been terminated.

69.     After receiving no response to Cunha's two takedown notices in 2022, providing Getty ample time to takedown the Photographs, and despite AFP's representations regarding communications with Getty, Cunha again emailed Getty yet a *third* takedown notice on April 27, 2023 with a hyperlink to all his 295 Photographs displayed on Getty's site.  Getty responded to Cunha the same day via email, seemingly not having read the takedown email or reviewing the link, asking Cunha to "Please provide the image number(s) or link(s) to the image on our website so that we may review this request."  This was the first response by Getty to Cunha after three attempts, hardly acceptable from Getty, one of the largest photo agencies in the world.

70.     Getty's inaction was in the face of Cunha's August 10, 2022, August 17, 2022 and April 27, 2023 takedown notices, and was despite AFP's affirmation that it notified Getty of the need to take down the Photographs, leading Cunha to retain counsel who sent Getty a fourth

takedown demand and preservation of evidence demand on May 9, 2023 via email to copyright@gettyimages.com and via U.S. Certified Mail.

71.     On or about May 15, 2023, Getty, through its counsel, suggested that when AFP complied with Cunha's August 2022 takedown demands, Getty assumed that AFP's removal of the Photographs from the AFP site somehow should have automatically triggered their simultaneous removal from Getty's platform(s), including its U.S. licensing website.  This did not happen is evidence of reckless and or willful conduct by Getty.

72.     Getty's misrepresentation is at odds with AFP's admission to Cunha that AFP sent Getty a directive ordering the removal of the Photographs from Getty's platforms. Getty's attempt at an after-the-fact explanation and defense to willful U.S copyright infringement and CMI violations clearly contradicts AFP's prior admissions in legal filings in this Cour that AFP has no control over or access to Getty's U.S. archive/licensing website, gettyimages, or Getty's U.S.-based server.

73.     As alleged above, Getty continued to infringe Cunha's Photographs starting on August 25, 2022 until about May 9, 2023 (over 8 months)—including but not limited to the reproduction, public display, distribution, holding out for licensing, and creation of derivative works—on Gettyimages.com to U.S. customers with respect to the Photographs.  Cunha observed his Photographs on Gettyimages.com during this time period despite the multiple takedown demands.

74.     As a result of the August 25, 2022 email terminating AFP and Getty's authority to commercially exploit the Cunha Photographs, any public display and distribution of the Cunha Photographs by Getty after August 25, 2022 was undertaken without Cunha's authorization, and Getty intentionally and willfully infringed Cunha's copyrights in his registered Photographs.

75.     On information and belief, after August 25, 2022, multiple third parties accessed one or more of the registered Photographs publicly displayed Getty's U.S. website.

76.     On information and belief, after August 25, 2022, one or more third parties paid Getty to license one or more of the registered Photographs through Getty's U.S. website.

77.     Only Getty Images has access to licensing history of the Photographs.

78.     On information and belief, under the AFP-Getty "content partnership agreement," for Getty to be the exclusive U.S. distributor of photographs supplied by AFP (which included Cunha's Photographs), AFP was contractually obligated to notify Getty of a claim of infringement/takedown notice regarding Cunha's Photographs that AFP provided to Getty, which AFP in fact confirmed they did at least twice.

79.     As demonstrated in the *Morel* case, AFP routinely circulates a "kill notice" to notify partners (e.g., Getty Defendants), licensees, and customers that a photograph should no longer be used because it is under a claim of infringement or assertion of copyright. In the *Morel* case, AFP circulated a "kill notice" on January 14, 2010, just one day after AFP learned of Daniel Morel's claim of infringement and months before a lawsuit was filed.

80.     If and to the extent "kill notices" were not previously circulated by AFP to Getty, on August 25, 2022 AFP represented that it circulated a "kill notice" for the Cunha Photographs to AFP's partners (e.g., Getty Defendants) and licensees and customers, just as it did for the Morel Photographs in 2010, or otherwise notified those third parties of Cunha's claim of infringement/copyright ownership regarding Cunha's Photographs.

81.     Despite any notices from AFP, Getty continued reproducing, distributing, creating derivative works from, publicly displaying, holding out for licensing, and otherwise commercially exploiting the registered Photographs through Getty's licensing platform and/or

U.S. website after August 25, 2022 with actual knowledge that such uses of the registered Photographs were unauthorized and infringing.

82.     Despite any notices from AFP, Getty continued reproducing, distributing, creating derivative works from, publicly displaying, holding out for licensing, and otherwise commercially exploiting the registered Photographs through Getty's licensing platform and/or U.S. website after August 25, 2022 with reckless disregard for whether Getty's conduct regarding the registered Photographs was unauthorized or infringing.   Evidence of infringement can been accessed below and downloadable PDF is available on this public link (the file size is more than 134 megabytes): 295 Photo infringements.pdf

(https://duncanfirmcom.sharepoint.com/:b:/g/ESG25autmqtAt83dde11pAoB1vlYilT8jdNlj2jI-I5wZQ?e=Zrq7hs)

83.     Even after the August 25, 2022 deadline to takedown the Photographs, Getty received notice again on April 27, 2023 that Getty's continued uses of the Photographs was infringing Cunha's rights, however, Getty continued reproducing, distributing, creating derivative works from, publicly displaying, holding out for licensing, and otherwise commercially exploiting the Photographs, which constituted willful copyright infringement.

84.     Getty knew its continued use of the Photographs on its licensing platform and/or U.S. website meant the continued display of the "gettyimages" watermark and the "EuroFootball" on the Photographs, as well as the "Getty Images" identifier on "IPTC" photograph metadata, all of which Getty knew or should have known to be false information following Getty disregarding Cunha's takedown deadlines, or at least Getty being put on-notice of his copyright infringement claims, as described above.

85.     At such time, Getty knew that its uses of the "gettyimages" watermark and of the "Getty Images" identifier on "IPTC" photograph metadata would each separately and independently induce, enable, and facilitate the downstream infringement of its subscribers and customers, and would conceal Getty's infringement because Getty knew or should have known that each violation would falsely inform third parties that Getty's use of the Photographs was authorized and would otherwise confuse third parties as to the true holder of copyright in the Photographs and authorized licensor.

86.     Because the false CMI concealed Getty's infringement and wrongly legitimized its use and offering of licenses of the Photographs to third-party licensees (Getty's customers and potential licensees of the Photographs), any third-party who licensed the Photographs from Getty after its use joined Getty in infringing Cunha's copyrights (albeit unknowingly).

87.     Even if no licenses were sold and issued after the date of revocation of authorization to use the Photographs, Plaintiff nevertheless suffered damages from Getty's continued use of the false CMI (e.g., the Getty Images watermark) after Cunha had revoked his authorization and Getty used its watermark with full knowledge, therefore Getty's use of the false CMI was intentional.

88.     By continuing to publicly display and offer the Cunha Photographs for licensing via Getty's licensing platform following its receipt of Cunha's takedown demands, AFP's kill notice, and/or Cunha's notice of copyright infringement claims, as described above, Getty distributed the Photographs with CMI that it knew to be false and knew had been altered without Cunha's authority.

89.     In doing so, Getty knew and/or had reasonable grounds to know that such continuing distribution with the false CMI would induce, enable, facilitate, or conceal Getty's

infringement and the infringement of its downstream partners, subscribers, and customers. This false CMI induced others to "license" Cunha's Photographs from Getty (which lacked the right to license them); and even if no licenses were actually sold by Getty, Getty's continuing display of the false CMI (with Getty's knowledge that it was false given the three takedown notices) causally prevented potential licensees to seek licenses from Cunha, the exclusive copyright holder of the Photographs under the U.S. Copyright Act.

90.     After Cunha sent multiple take down notices, Getty has attempted to defend its conduct here, suggesting that when AFP removes photographs that are publicly displayed from AFP's licensing site in response to a takedown demand, AFP's removal of the photos from the AFP archive licensing site somehow automatically removes photos from Getty's U.S. archive/licensing site. However, this misrepresentation is inconsistent with AFP's admission to Cunha in the August 30, 2022 email that AFP communicated with Getty to remove the Cunha Photographs in August 2022.

91.     Getty represented that AFP has control and access to make changes to Getty's U.S. archive/licensing website or Getty's U.S.-based server.

**CLAIMS FOR RELIEF**

**COUNT I**
**Copyright Infringement of the Registered Photographs**
**Under 17 U.S.C. §§ 101 *et seq.***
**(All Defendants)**

92.     Cunha repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

93.     Cunha owns valid and subsisting copyright registrations in the Photographs, namely, the registered Photographs.

94. Cunha has revoked any authorization to Getty Images or their partners, agents, licensees, affiliates, employees, contractors, customers, subscribers, or users to continue to use, copy, publicly display, distribute, license, manipulate, or otherwise commercially exploit the Photographs, namely, the registered Photographs.

95. Getty Images has directly infringed Cunha's copyrights in the registered Photographs, by using, copying, publicly displaying, distributing, licensing, manipulating, or otherwise commercially exploiting the Photographs, without Cunha's authorization and with actual notice of Cunha's copyright claims.

96. Getty Image's infringement of the registered Photographs was willful and intentional.

97. Getty Images intentionally and willfully infringed Cunha's copyrights in his Photographs by continuing to distribute, hold out for licensing, publicly display, market, sell, and otherwise commercially exploit the Photographs after Cunha terminated his authorization to do so, and Getty did so with actual knowledge that its authority had been revoked multiple times, and with actual notice of Cunha's copyright claims.

98. Getty caused damages to Cunha from copyright infringement of the Photographs and had the right and ability to take down the Photographs after multiple notifications.

99. Getty had actual knowledge of the infringement of the Photographs and materially contributed and caused infringement once authorization to display, distribute, and publish was revoked by Cunha.

100. Getty Images is vicariously liable for their respective employees', contractors', and/or agents' infringement of Cunha's Photographs as described above.

101.    Getty Images knew or had reason to know of their respective employees, contractors, and agents' infringement and intentionally induced and/or materially contributed to such infringement.

102.    Getty Images knew or had reason to know of, and materially contributed to the infringement of those to whom each of them marketed, licensed, sold, or otherwise facilitated the use of the Photographs.

103.    Getty Images is contributorily liable for their respective employees', contractors,' and agents' infringement.

104.    Getty Images is secondarily liable for their respective employees, contractors, and agents' infringement.

105.    Cunha has suffered actual damages as a direct and proximate result of Getty Images' direct and secondary infringement.

106.    Pursuant to 17 U.S.C. § 504(c)(2), as a result of Getty Images' infringement of Cunha's exclusive rights in the Photographs, Cunha is entitled to recover statutory damages up to a maximum amount of $150,000 with respect to each of his 295 Photographs, all registered prior to August 25, 2022 pursuant to 17 U.S.C. § 504(c)(1) when Getty's authorization to use the Photographs was terminated.

107.    Alternatively, at Cunha's election prior to entry of final judgment, Cunha is entitled to recover damages based on his actual damages suffered as a result of Defendant's infringements and the disgorgement of Defendant's profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial.

108.    Cunha is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

109.    Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Cunha, unless enjoined by this Court. Cunha has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Cunha is entitled to a permanent injunction prohibiting infringement of Cunha's exclusive copyrights in his Photographs by the Defendant and all persons acting in concert with the Defendant.

### COUNT II
### Violations of Copyright Management Information
### Under 17 U.S.C. § 1202
### (All Defendants)

110.    Cunha repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

111.    As alleged above, Getty Images previously affixed its watermark at some point prior to Cunha withdrawing his authorization to use his Photographers, and after being on actual notice and having actual knowledge to stop displaying the Photographs as of August 24, 2022, Getty Images continued, with that knowledge, to distribute its gettyimages watermark on each of the Photographs, which converted to and became false copyright management information in connection with the reproduction, distribution, public display and holding out for license of the Photographs.

112.    As alleged above, the false copyright management information incorrectly identifies Getty (e.g., "gettyimages,") as opposed to solely crediting Cunha as the exclusive copyright interest holder in the Photographs or authorized licensor of Cunha's Photographs after Cunha revoked authorization to his Photographs.

113.    The continued use of false copyright management information (the gettyimages watermark for example) provided in connection with the reproduction, distribution, public

display and holding out for license of the Photographs on gettyimages.com was intended by Getty Images to facilitate or conceal the infringement of Cunha's exclusive copyrights.

114.     Getty Images intended the false copyright management information to induce customers and potential customers (licensees) of Cunha's Photographs to believe that Getty Images, as opposed to Cunha, owned or controlled the copyrights in the Photographs or had actual licensing authority so that a potential licensee would go only go to Getty Images for a license, and not Cunha.

115.     Getty Images' actions constituted willful and deliberate violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a).

116.     As of at least August 25, 2022, Getty knew that its continued use the gettyimages watermark under 17 U.S.C. § 1202 (a) was "False Copyright Management Information," and Getty Images, in violation of the law, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, continued to (1) provide copyright management information that Getty Images knew was false, and/or despite this knowledge, continued to (2) distribute copyright management information that is false by using the "gettyimages" watermark after August 25, 2022 until at least May 8, 2023, all the while having actual knowledge that Getty Images did not have authority to use the gettyimages watermark in the display of Cunha's photos.

117.     By reason of Defendants' CMI violations, Cunha has suffered damages and is entitled to recover its actual damages and to disgorge any additional profits of Defendant attributable to the violations, pursuant to 17 U.S.C. § 1202(c)(2).

118.     Alternatively, and at Cunha's sole discretion exercised any time prior to entry of final judgment, Cunha is entitled to recover statutory damages in an amount between $2,500 and $25,000 per violation of the Digital Millennium Copyright Act, pursuant to 17 U.S.C. §

1203(c)(3)(B) for at least 295 CMI violations, at least one for each of the Cunha Photographs that displayed the gettyimages watermark, which was false.

119.    Further irreparable harm is imminent as a result of Defendant's conduct, and Cunha is without an adequate remedy at law. Cunha is therefore entitled to an injunction, in accordance with 17 U.S.C. § 1203(b), restraining Defendant, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendant from engaging in further violations of the Digital Millennium Copyright Act.

120.    Cunha is entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 1203(b)(4) and (5).

## PRAYER FOR RELIEF

WHEREFORE, Cunha requests that this Court enter judgment in his favor on each and every claim for relief set forth above and award him relief, including the following:

1) ***For Count I, Copyright Infringement Under 17 U.S.C. §§ 101 et seq.***

A.    That an Order be entered against Defendant Getty Images for violating the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq*. by infringing Plaintiff's copyrights in Cunha's Photographs;

B.    That an Order be entered against Defendant Getty Images in favor of Plaintiff for such damages as Plaintiff has sustained as a result of Defendant's infringement of the Photographs;

C.    That an Order be entered compelling Defendant Getty Images to account for and/or disgorge all gains, profits, and advantages derived by Defendant Getty Images by their infringement of Plaintiff's copyrights in the Photographs or such damages supported

by the provisions of the Copyright Act with respect to the Photographs, 17 U.S.C. §§ 101 *et seq.*;

D.      That an Order be entered granting injunctive relief against Defendant Getty Images pursuant to 17 U.S.C. § 502 preventing and restraining infringement of Plaintiff's copyrights in the Photographs by Ordering Defendant Getty Images, their agents, or anyone working for, in concert with, or on their behalf not to use, publish, publicly display, distribute, hold out for licensing, commercialize, or in any way use or disseminate Plaintiff's copyrighted works, namely, the Photographs;

E.      That an Order be entered against Defendant Getty Images pursuant to 17 U.S.C. § 503 for the impounding and return to Plaintiff of all copies of the Photographs it has in its possession, including but not limited to the original, high-resolution image files for each Photographs;

F.      That an Order be entered against Defendant Getty Images pursuant to 17 U.S.C. § 503 for the impounding and/or destruction of all materials used in the violation of Plaintiff's exclusive copyrights in the Photographs and any other articles by means of which such copies may be reproduced;

G.      That an Order be entered requiring Defendant Getty Images to pay Plaintiff his costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505;

H.      That an Order be entered requiring Defendant Getty Images to pay Plaintiff punitive damages, as permitted by law, in an amount to be determined due to the foregoing willful acts;

I.      That Plaintiff be granted prejudgment and post-judgment interest as permitted by law; and

J.      Other relief as the Court may deem appropriate.

    2)  ***For Count II, Violations of Copyright Management Information Under 17 U.S.C. §§ 1201 et seq.***

A.      That an Order be entered against Defendant Getty Images for violating the provisions of the Copyright Act, 17 U.S.C. §§ 1201 *et seq*. by committing copyright management information violations in connection with Cunha's Photographs;

B.      That an Order be entered against Defendant Getty Images in favor of Plaintiff for such damages as Plaintiff has sustained as a result of Defendant Getty Images' copyright management information violations in connection with the Photographs;

C.      That an Order be entered compelling Defendant Getty Images to account for and/or disgorge all gains, profits, and advantages derived by Defendant Getty Images' copyright management information violations in connection with the Photographs pursuant to 17 U.S.C. §§ 1203 and/or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq*.;

D.      That an Order be entered against Defendants pursuant to 17 U.S.C. § 1203 awarding enhanced statutory damages for each copyright management information violation in connection with the Photographs;

E.      That an Order be entered granting injunctive relief against Defendant Getty Images pursuant to 17 U.S.C. § 1203 preventing and restraining copyright management information violations in connection with the Photographs by Ordering Defendant Getty Images, their agents, or anyone working for, in concert with, or on their behalf to discontinue such violative acts;

F.      That an Order be entered against Defendant Getty Images pursuant to 17 U.S.C. § 1203 for the impounding and/or destruction of all materials used in the copyright management information violations in connection with the Photographs and other articles by means of which such acts were undertaken;

G.      That an Order be entered requiring Defendant Getty Images to pay Plaintiff his costs and attorneys' fees in this action pursuant to 17 U.S.C. § 1203;

3) *For All Counts*

A.      That an Order be entered requiring Defendant Getty Images to pay Plaintiff punitive damages, as permitted by law, in an amount to be determined due to the foregoing willful acts;

B.      That Plaintiff be granted prejudgment and post-judgment interest as permitted by law; and

C.      Other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Dated: August 1, 2023                              Respectfully Submitted,

New York, New York                                 DUNCAN FIRM, P.A.

                                                   */s/ James H. Bartolomei III*
                                                   James H. Bartolomei III
                                                   Of Counsel
                                                   809 W. 3rd Street
                                                   Little Rock, Arkansas 72201
                                                   Tel.:    (501) 228-7600
                                                   Fax:     (501) 228-0415
                                                   james@duncanfirm.com

and

HOBEN LAW
Bryan D. Hoben
1112 Main Street
Peekskill, New York 10566
Tel.:      (347) 855-4008
bryan@hobenlaw.com

*Counsel for Plaintiff*
*Paulo Henriques Da Cunha*